IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs February 14, 2006

## STATE OF TENNESSEE v. KATHY COOPER

**Direct Appeal from the Circuit Court for Blount County**
**No. C-10576       D. Kelly Thomas, Jr., Judge**

---

**No. E2005-01243-CCA-R3-CD - Filed May 1, 2006**

---

The community corrections sentence of the defendant, Kathy E. Cooper, was revoked after a new law violation of driving under the influence, and the trial court resentenced her to serve twelve years, the maximum in the range, in the Department of Correction.  On appeal, the defendant contends that the trial court inappropriately enhanced her sentence and revoked her community corrections sentence.  Upon review, we conclude that facts which develop between the time a defendant is sentenced to community corrections and the time the sentence is revoked may be considered in applying enhancement factors and increasing a sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Raymond Mack Garner, District Public Defender, and Stacey D. Nordquist, Assistant Public Defender, for the appellant, Kathy Cooper.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Michael L. Flynn, District Attorney General, and Robert L. Headrick, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Facts and Procedural History

The defendant pled guilty on January 26, 1998, to vehicular homicide by intoxication in exchange for an eight-year sentence as a Range I, standard offender.  The trial court conducted a sentencing hearing on April 20, 1998, and imposed a sentence of split confinement, with forty-seven days to be served in the county jail and the balance of the sentence in a community corrections program.

On April 22, 2003, approximately five years into her sentence, the defendant was arrested for driving under the influence, and a community corrections warrant was subsequently issued. At the hearing, Patricia Ballard, the defendant's community corrections officer, testified that the defendant informed her of the arrest. She testified that she was aware of the defendant's pain medication and that she knew the defendant was aware that the medication should not be taken while driving. The officer further testified that the defendant had met all the conditions of her community corrections program prior to her arrest and that she recommended leniency with the defendant. Her recommendation was that the defendant be placed on house arrest for a period of ninety days so that her medications could be reevaluated in order to remove her from as many medications as possible.

Officer Rodney Wilson testified that he was employed with the Alcoa Police Department working as a field training office on the afternoon of the defendant's arrest. Officer Wilson testified that he received several calls that the defendant was driving recklessly on the Alcoa Highway at approximately 5:20 p.m. He further testified that the traffic was heavy and that by the time he reached the defendant, she had already been involved in an accident. Officer Wilson further testified that he made a videotape of his interaction with the defendant. This videotape was admitted as an exhibit and played before the court. The tape shows that the defendant was unable to stand without leaning against her vehicle and that she had great difficulty answering questions. The tape further showed that the defendant informed the officer she had taken four "Somas" and that the prescription bottle in her possession belonged to her daughter. Officer Wilson testified that the defendant was, in his opinion, under the influence of narcotics at the time of her arrest. He testified on cross-examination that there were no personal injuries sustained in the accident although there was extensive property damage to the defendant's vehicle.

The defendant's nineteen-year-old daughter, Kelly Cooper, testified that she spent a lot of time with the defendant. She further testified that the defendant had a driver's license but that she and her older sister usually drove the defendant. She agreed that the defendant appeared impaired on the videotape but said that it was not the "norm" and that she had never seen the defendant drive in an impaired condition or take any of her sister's medication.

The defendant testified at the sentencing hearing. She testified that her physician prescribed Lortab and Soma after the accident which resulted in the vehicular homicide charge. She acknowledged that she took four Somas on the day of her DUI arrest and insisted that it was prescribed for her and was not her daughter's medication. She testified that she was on her way to assist a friend, had forgotten that she had taken her medication, and thought she was capable of driving. The defendant testified that she wanted to be placed back on community corrections because it had helped her. She further testified that during the time she had been without her pain medication in jail, she realized that she could handle the pain without the medication and would never take it again.

The trial court revoked the defendant's community corrections sentence and found that she had clearly violated its terms by her arrest for DUI. The trial court found no applicable mitigating factors and applied enhancement factor (9), "the defendant has a previous history of unwillingness

to comply with the conditions of a sentence involving release in the community," applicable based on her arrest for DUI.  See T.C.A. § 40-35-114(9) (2003)

## Analysis

On appeal, the defendant alleges that the trial court erred in resentencing her to twelve years in confinement after revoking her community corrections sentence.  She contends that the trial court did not properly apply enhancing and mitigating factors in reaching its decision.  The defendant argues that because she completed five years of an eight-year community corrections sentence before she was violated for driving under the influence, she should be rewarded for her compliance rather than punished for a single violation.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d).   As the Sentencing Commission Comments to this section note, the burden is on the defendant to show that the sentence is improper. If the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result was preferred.  State v. Elam, 7 S.W.3d 103, 105 (Tenn. Crim. App. 1999); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The sentence to be imposed by the trial court for a Class B felony is presumptively the minimum in the range when there are no enhancement or mitigating factors present.   T.C.A. § 40-35-210(c).  Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors.  T.C.A. § 40-35-210(d), (e).  The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record.  T.C.A. § 40-35-210, Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see State v. Ashby, 823 S.W.2d 166 (Tenn. 1991).

The defendant contends that the trial court erred by resentencing her to confinement.  She argues that:  (1) the trial court erred by applying enhancement factor (9), that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community; (2) the trial court erred in ordering confinement because this is the first violation of her community corrections sentence; (3) the new law violation, DUI, was committed in a manner without the intent to violate the law; and (4) the trial court erred by using one mistake by the defendant to conclude that past efforts at rehabilitation were a failure.

First, the defendant challenges the trial court's application of the enhancement factor found in Tennessee Code Annotated section 40-35-114(9), that she has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community as it relates to the enhancement of her original sentence.  Although she concedes that her actions were a violation of

her community corrections sentence, the defendant maintains that the record is insufficient to show an unwillingness to comply with a sentence not involving confinement. Despite her contention, we conclude that her inability to comply with her community corrections sentence, with the same type of behavior that placed her on community corrections, supports the application of enhancement factor (9). This is an appropriate factor for the trial court to consider in determining the manner in which the defendant is to serve her sentence. See T.C.A. § 40-35-103(1)(c). "We conclude that facts which have developed between the time a defendant is initially sentenced to community corrections, and the time that the sentence is subsequently revoked, may be considered in applying enhancement factors and increasing a sentence. If this conclusion was incorrect, then upon revocation of community corrections, a sentence could be increased based only upon facts which existed prior to the date of the original sentencing." State v. Godwin, No. W2001-00212-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 977, at *17-18 (Tenn. Crim. App. Dec. 14, 2001, at Jackson). This is especially significant because the behavior which caused the violation warrant to be filed is substantially similar to the behavior that resulted in the initial conviction. By her actions, the defendant has failed to show that she is capable of rehabilitation by less restrictive means than confinement. "Since the statute allows for an increase in the length of the sentence upon revocation of community corrections sentencing, and the statute does not specifically limit consideration to the enhancement factors that existed at the time of the original sentence, we conclude that conduct of the Defendant while serving a community corrections sentence can be used to establish the applicability of enhancement factor." Id.

Next, the defendant contends that, because this was the first violation of her community corrections sentence, the trial court erred in ordering confinement. Upon revocation of a community corrections sentence, a trial court may resentence a defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed as long as it gives the defendant credit for any time already served in any community-based alternative to incarceration. T.C.A. § 40-36-106(e)(4) (2003). If the trial court resentences the defendant to a more severe sentence than originally imposed, it must conduct a sentencing hearing in accordance with the Sentencing Act of 1989. State v. Crook, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). The trial court may not arbitrarily increase the length of the defendant's sentence and must state on the record its reasons for the sentence imposed. See T.C.A. §§ 40-35-209(c), -210(f)-(g); State v. Ervin, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996).

Although the trial court did not expressly address the defendant's proposed mitigating factors, it did so implicitly by issuing a ruling explaining its sentencing determinations immediately after defense counsel concluded her argument for applying the mitigating factors. The trial court issued the following ruling:

> Based upon the proof, the evidence is clear that [the defendant] has violated the terms of her Community Correction[s] agreement. I have listened to the testimony both days, considered that. I have also reviewed the court file and looked at the plea and the plea agreement.

I note that [the defendant] has somewhere in the neighborhood of five years credit against this sentence. And it was a range-one sentence. At the time that the judgment was signed, . . . there were no enhancing factors in the record. There is now. The enhancing factor that exists now is that [the defendant] has a history of unwillingness to comply with the conditions of release into the community.

Given the seriousness of the . . . charged offense of vehicular homicide, the nature of the violation of the rules of release - - that is, it's the same violation as in the original conviction, if not worse. I looked at the blood alcohol test. It was a .08. From the proof that I've seen today, your impairment out on the Alcoa Highway at 5:15 in the afternoon was greater than it was the day that you had this fatal wreck with a .08. . . . So, this enhancing factor weighs very, very heavily, in my judgment.

And so, in light of that enhancing factor, I am resentencing you from eight years to twelve years. You're still a range-one offender. You still have five years of jail credit and are eligible for release already. It will be up to the Probation and Parole Board. In deciding how the sentence is to be served, based on the evidence I've heard today and the evidence from the earlier sentencing agreement, a lack of confinement would depreciate the seriousness of the offense.

The sentence should have relationship to the seriousness of the crime and encourage rehabilitation. That was attempted and was successful for a period of time, and then totally violated by doing the same thing that led to the death of the victim in this case. And just by who knows what – sheer luck or divine providence – you or someone else wasn't killed out on the Alcoa Highway in rush hour traffic.

So, I think the potential of lasting rehabilitation at this point is poor. And one of the considerations in prison sentences is people have shown a failure of past efforts at rehabilitation. So, that is the reason.

The trial court is not required to mitigate or even be lenient on a defendant simply because it is her first violation. In the instant case, the trial court considered that the defendant successfully completed five years of her sentence before her first violation. However, because the violation was of the same manner as the underlying offense, the trial court properly concluded that the potential of lasting rehabilitation is poor. The defendant's argument is without merit.

Next, the defendant contends that the new law violation DUI was committed in a manner without the intent to violate the law. The defendant argues that the trial court erred in finding that both instances of DUI were similar in nature because she contends that she did not intentionally drive under the influence on the day of her violation. Here, she contends that she had a prescription for the substance that impaired her ability to drive safely while in the underlying offense she was mixing alcohol and illegal drugs. This argument is without merit. The defendant drove under the influence whether caused by prescription medicines or by illegal substances. The statute does not draw a

distinction between driving under the influence of illegal drugs, alcohol, or legally prescribed substances. See T.C.A. § 55-10-401. It is no defense to driving under the influence that the person is a lawful user. T.C.A. § 55-10-402. Because she was impaired while driving the vehicle, the trial court did not commit error.

Finally, the defendant contends that the trial court erred by using one mistake by the defendant to conclude that past efforts at rehabilitation resulted in failure. As stated previously, the community corrections regulations do not require the court to be lenient or mitigate a defendant's sentence simply because it is her first violation. It is within the discretion of the trial court to determine the sentence when a violation occurs. It was not error for the trial court to draw this conclusion because this violation was substantially similar to the underlying conviction. We find that the trial court was within its discretion to resentence the defendant for her violation.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE