# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville May 20, 2014

## STATE OF TENNESSEE v. LARRY DAVID TAYLOR

**Appeal from the Criminal Court for Sumner County**
**Nos. 823-2012, 571-2012      Dee David Gay, Judge**

**No. M2013-02386-CCA-R3-CD - Filed June 23, 2014**

On February 7, 2013, the Defendant, Larry David Taylor, pled guilty to two counts of sexual exploitation of a minor, a Class D felony; one count of aggravated burglary, a Class C felony; one count of assault, a Class A misdemeanor; and two counts of bigamy, a Class A misdemeanor.  See Tenn. Code Ann. §§ 39-13-101, -14-403, -15-301, -17-1003.  The trial court imposed an effective six-year sentence and ordered the Defendant to serve one year of the sentence in confinement with the remainder to be served on community corrections.  On September 13, 2013, the trial court revoked the Defendant's community corrections sentence and resentenced the Defendant to a total effective sentence of sixteen years, nine months, and eighty-seven days to be served in confinement.  In this appeal as of right, the Defendant contends (1) that the trial court erred in ordering his sentences to be served in confinement; and (2) that the trial court erred by ordering his sentences to be served consecutively.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

Russell Elliott Edwards, Hendersonville, Tennessee (at revocation hearing); and Eric Scott Mauldin, Gallatin, Tennessee (on appeal), for the appellant, Larry David Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Jayson Christopher Criddle, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

At the outset, we note that our review of this matter is hampered by the Defendant's failure to include a transcript of the guilty plea submission hearing in the record. However, it appears from the record that the seventeen-year-old victim lived with the Defendant and his wife and that they "were kind of acting as her authority figures." There were several pictures of the victim on the Defendant's cell phone, including a picture of the victim topless and a picture of "her genital region."

Both the Defendant and the victim admitted to the police that the victim had a sexual relationship with the Defendant's wife. The Defendant denied having a sexual relationship with the victim, but told the investigating officer that on one occasion, he "had walked in on his wife and the victim" and that "he could have touched the victim." The victim told the investigating officer that the Defendant had performed oral sex on her on one occasion.

As part of the plea agreement, the Defendant received the maximum sentence for each offense. Additionally, as a condition of his community corrections sentence, the Defendant was to have no contact with the victim, her family, or any minors. Jennifer Woodard, the Defendant's case officer for the Community Corrections Program, filed four violation warrants against the Defendant between May 1 and August 16, 2013. Ms. Woodard testified that between February 7 and August 16, 2013, the Defendant had called the victim 184 times and made 231 attempted phone calls.

Between February 7 and August 16, 2013, the victim visited the Defendant in jail twelve times. On one visit, the victim brought her two-year-old daughter. On another, the victim attempted to sneak into the jail by having her mother sign-in and then "kind of hiding in the corner of the booth." Audio recordings of four of the Defendant's phone calls were played for the trial court. In one of the recordings, the Defendant and the victim discussed how they had sex on several occasions. In another, the Defendant and the victim discussed how to continue speaking to each other without getting caught.

Ms. Woodard admitted that the victim was eighteen years old when the contact at issue with the Defendant occurred. Ms. Woodard also admitted that there was no evidence that the Defendant was harassing the victim or that their relationship was not consensual. The victim sent a hand-written letter to the trial court requesting that the no contact condition of the Defendant's sentence be removed. The Defendant provided the following statement in his presentence report: "My so-called victim is my current girlfriend and I contacted her. She has already filled out the paperwork to get the no contact order removed. She is over the age of [eighteen] so I thought everything would be alright since she filled out the paperwork."

At the conclusion of the revocation hearing, the State argued that the Defendant should serve his sentence in confinement because he had a long history of criminal conduct, confinement was necessary to avoid deprecating the seriousness of the offense, and the Defendant had "been on probation on a number of occasions." The Defendant's presentence report reflected that the Defendant had previously been convicted three times for assault; three times for driving on a suspended license; twice for bigamy; and one time each for theft, possession of drug paraphernalia, and attempted possession of drug paraphernalia. The Defendant's first offense occurred in 1997 when the Defendant was eighteen years old and he continued to regularly commit offenses until his arrest in this case.

In ordering the Defendant's sentence to be served in confinement, the trial court stated as follows:

> The aggravating thing is that [the Defendant] kept on getting warrants and it didn't stop him one bit. It appears that nothing has stopped him and he'll do what he wants to do when he wants it and he's pretty well stated how he feels about the rule of law and probation and his sentence.

> It's very clear that the Defendant has violated the terms of his sentence and it's clear to me, based on the manner in which he'd done it and how he's done it and the outright just in-your-face attitude, that this sentence will be served in the Tennessee Department of Correction and the remainder of the sentence will be imposed.

Furthermore, the trial court reviewed all of the Defendant's prior convictions and imposed consecutive sentences, stating that there was "ample" evidence in the record that the Defendant "has an extensive history of criminal conduct and doesn't give a rip about the law. He only cares about what he can get out of life. Society is going to be endangered and women will be victimized as long as he is free."

## ANALYSIS

The Defendant contends that the trial court erred in ordering that his sentences be served in confinement. The Defendant argues that the trial court did "not address any of the factors that . . . [it was] required to follow in order to impose a sentence to serve." The Defendant further argues that the trial court "used a factor not enumerated as a proper sentencing factor," the Defendant's repeated violations of the terms of his community corrections sentence. The Defendant also contends that the trial court erred in imposing consecutive sentences. The Defendant argues that the trial court applied "a single unreasonable factor" and that his criminal history was not extensive given that all of his

convictions were for misdemeanors. The State responds that the trial court did not abuse its discretion in resentencing the Defendant.

A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that an offender violated the conditions of his suspended sentence. Tenn. Code Ann. § 40-36-106(e)(3)-(4); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Upon revoking community corrections, a trial court has the authority to "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4).

Our supreme court has previously stated that "the sentencing of a defendant to a community based alternative to incarceration is not final, but is designed to provide a flexible alternative that can be of benefit both to the defendant and to society." State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). Further, a "defendant sentenced under the [Community Corrections Act] has no legitimate expectation of finality in the severity of the sentence, but is placed on notice by the Act itself that upon revocation of the sentence due to the conduct of the defendant, a greater sentence may be imposed." Id.

However, if the trial court decides to increase a defendant's sentence beyond that originally imposed, it may only do so after conducting a new sentencing hearing. State v. Crook, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). The trial court may not arbitrarily increase the length of the sentence and must state on the record the reasons for the new sentence. State v. Ervin, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996); State v. Chester Carr Pearson, No. M2011-02241-CCA-R3-CD, 2012 WL 3834031, *4 (Tenn. Crim. App. Sept. 5, 2012).

On appeal, the burden is on the defendant to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts. Our supreme court has held that an "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The Defendant was eligible for probation because each of the sentences "actually imposed upon [him were] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a). Thus, the trial court was required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(b). However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The

defendant has the burden of establishing his or her suitability for full probation. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000).

In determining any defendant's suitability for alternative sentencing, the trial court should consider whether

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

We cannot conclude that the trial court abused its discretion in denying the Defendant a second alternative sentence. In sentencing the Defendant, the trial court discussed in detail the Defendant's lengthy criminal history. The trial court's discussion of the Defendant's repeated violations of the terms of his community corrections sentence was not an improper factor for it to consider. The fact that the Defendant had violated the terms of his community corrections sentence literally hundreds of times in the span of seven months was a valid consideration for the trial court in addressing the Defendant's lack of potential for rehabilitation and whether measures less restrictive than incarceration had recently been applied unsuccessfully to the Defendant. As such, we conclude that the Defendant has failed to overcome the presumption of reasonableness given to the trial court's decision or show that the trial court abused its discretion in denying a second alternative sentence.

With respect to the trial court's consecutive sentencing decision, our supreme court has recently clarified that a trial court's imposition of consecutive sentences is reviewed by this court for an abuse of discretion and that "the presumption of reasonableness applies," giving "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." State v. James Allen Pollard, --- S.W.3d ---, No. M2011-00332-SC-R11-CD, 2013 WL 6732667, at *9 (Tenn. Dec. 20, 2013). "Any one of [the] grounds [listed in Tennessee Code Annotated section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." Id. (citing State v. Dickson, 413 S.W.3d 735 (Tenn. 2013)).

If a defendant is convicted of more than one criminal offense, regardless of whether the offenses are felonies or misdemeanors, the trial court is required to determine whether the sentences will run consecutively or concurrently. Tenn. Code Ann. § 40-35-115(a); see also Tenn. Op. Att'y Gen. 98-150 (Aug. 12, 1998). A trial court may impose consecutive sentences if it finds by a preponderance of the evidence that the defendant "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2).

Consecutive sentences were warranted in this case based upon the Defendant's extensive criminal history. See State v. Robert Smith, No. W2006-00998-CCA-R3-CD, 2007 WL 162181, at *4 (Tenn. Crim. App. Jan. 23, 2007) (holding that trial courts are permitted to consider misdemeanor offenses in determining if an extensive criminal history is established), perm. app. denied, (Tenn. May 21, 2007). As outlined by the presentence report and the trial court at the revocation hearing, the Defendant had previously been convicted three times for assault; three times for driving on a suspended license; twice for bigamy; and one time each for theft, possession of drug paraphernalia, and attempted possession of drug paraphernalia. We disagree with the Defendant's assertion that his eleven prior convictions, spanning his adult life, did not constitute an extensive criminal history. Accordingly, we conclude that the trial court did not abuse its discretion in imposing consecutive sentences.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE